47  295
80  454

### THE STATE OF TEXAS V. FRANCISCO CUELLAR.

1. EVIDENCE.—An instrument certified to by the officer of a foreign government, which purports to give extracts taken from the archives of his office, and which also contains, in the language of the officer, descriptive recitals of other matters, which he alleges are contained in said archives, cannot be used as evidence when the recitals in the instrument to which the certificate is attached are necessary to make intelligible the extracts from the archives.

2. EVIDENCE—LAND.—Though the practice has prevailed of permitting intelligent Mexicans, who are not lawyers, to testify in relation to the laws of Spain and Mexico in suits involving title to lands, such evidence is only valuable as showing the contemporaneous construction given to such laws, and beyond this is valueless, when introduced to show what constitutes title.

3. GRANT—PAROL EVIDENCE.—Where a grant from the Government of Spain or Mexico, to land now situated in Texas, has been lost or destroyed, parol evidence is admissible to show the existence of and contents of the original grant from which preserved extracts offered in evidence were taken.

4. See facts held insufficient to authorize a confirmation of title under an "Act to ascertain and adjudicate certain claims to land, against the State, situated between the Nueces and Rio Grande rivers," approved August 15, 1870.

5. EVIDENCE.—A translation, made by one appointed by the Governor, of an act or grant contained in the archives of Reynosa, Camargo, Mier, and Guerrero, in Mexico, and Laredo, in Texas, under the authority of the act of April 24, 1771, (Paschal's Dig., art. 5826,) though deposited in the land office, does not constitute an archive thereof.

6. PLEADING—LAND.—See opinion descriptive of land held insufficient in a suit to confirm title.

7. LAND—SPANISH GRANT—LIMITATION.—Whatever aid long possession may give to one claiming title, it is not, of itself, sufficient, under the act of August 15, 1870, (2 Paschal's Dig., art. 2068;) and the title which it can aid, whether perfect or imperfect, must be established by the ordinary rules of evidence applicable to the proof of proper titles, unless it can be shown to be impracticable, from the loss or destruction of records and papers pertaining to it.

APPEAL from Travis. Tried below before the Hon. J. P. Richardson.

The facts are given in the opinion.

This was one of a number of suits involving land, brought

under "An act to ascertain and adjudicate certain claims for land against the State, situated between the Nueces and Rio Grande rivers," approved August 15, 1870. (General Laws, Called Session, 1870, p. 201; Paschal's Dig., art. 7068.) Section one of said act is as follows:

"SEC. 1. That any person who may be the original grantee, heir, or legal assignee of any grant of land emanating from the Spanish or Mexican Governments, and having its origin previous to the nineteenth day of December, A. D. 1836, and situated between the Nueces and Rio Grande rivers, and below a line drawn from the northern boundary of Webb county to the mouth of the Moros creek, emptying into the Nueces river, may file a petition to the District Court of the county of Travis, or where the capital of the State may be; which petition shall be filed at least ten days before the time of holding of said District Court, and shall contain a full description of the land claimed, setting forth particularly its situation, boundaries, and extent; and shall accompany such petition with the titles, or evidences of title, or right under which the same is held or claimed; and the said District Court shall investigate the same in accordance with the laws of nations, the laws, usages, and customs of the Government from which the claim is derived, and the principles of equity, so far as the same are applicable, and shall give judgment for the confirmation of the same when the title is perfect, or when imperfect, when the same would have been matured into a perfect title under the laws, usages, and customs of the Government under which it originated, had its sovereignty over the same not passed to, and been vested in the Republic of Texas: *Provided*, Said title or right was originally founded in good faith, and provided that no service of such petition shall be necessary."

The facts involved in the case, brought under this act, are manifest from the opinion.

*George Clark, Attorney General,* for the State.

*Peeler & Fisher,* also for the State.

*James H. Bell,* and *Chandler, Carleton & Robertson,* for appellees.

ROBERTS, CHIEF JUSTICE.—The plaintiff, Francisco Cuellar, on behalf of himself and other heirs, brings this suit, under the act of the Legislature of the State of Texas, of the 15th of August, 1870, to obtain confirmation of the title to a tract of land of 34 labors, on which is situated the town of Carisso, running 1,700 varas on the Rio Grande, (east bank,) and 20,000 varas back therefrom, in Zapata county. This land is alleged to be a portion granted to their ancestor, Jacinto de Cuellar, in fee simple, as one of the first settlers of the town of Ravilla, (now Guerrero,) on the west bank of said river, in Tamaulipas, Mexico, by a royal commission, which at that place, and in all the due forms of law, in 1767, and with full authority, founded and laid off the said town, with its defined extent and surrounding territorial jurisdiction; divided the lands thereof, by surveys, into lots, and portions for pasture lands, and provided for their distribution and allotment to the registered and designated settlers, one of whom was said Jacinto de Cuellar, to whom was granted, in full possession and right of property, one *porcion,* No. 36, which has been in the possession of him and his heirs from the date of the grant to the present time.

Filed with the petition was the following document, as the title under which the plaintiffs claim the said land, to wit:

"FOURTH SEAL, { NATIONAL COAT OF ARMS FOR THE Years 1848 and 1849. } Twelve and a half Cents."

"Alejo Gutierez, only constitutional alcalde of the city and its jurisdiction, &c., I hereby certify, according to law, that in the book wherein appears the surveys and possessions of pasture lands that the royal commission (General Viceta) adjudicated to the first settlers of the city, on page 18, in front, is found the survey, marked (No. 36 is an exact copy) as follows:

"'In the same direction, and on the same day, the thir-

teenth of July, 1767, along the banks of the river were measured one thousand and seven hundred Mexican varas, thirty-four cordels, with an equal number at the opposite end, and twenty thousand for the side lines, completed the *porcion*. The same numbered, it was applied for by Dr. Joaquin Cuellar, to whom it was granted.'

"In the same manner, upon page 6, front and back of the Book of Possession, is found the act of possession, under No. 29, that explains, as follows:

"'In succession, they passed to the point named Las Animas, under which appellation are included three *porciones* of land, the first belonging to Jacinto de Cuellar, the second to Dr. Joaquin de Cuellar, and the third to Dr. Bartolome de Cuellar, where the same demonstrations were made as before, when said Jacinto presented himself, and represented the proper persons of his father and brother, in conjunction with his own, and to him was given possession in the name of all, and he received the same in proper conformity with the rest, upon the conditions expressed, the cited witnesses being present.'

"And, upon the petition of Antonio Cuellar Guerretz, and for the uses that may accrue, the foregoing copies, duly certified, were delivered to him, duly corrected, and compared with the original that exists in the archives of this tribunal in my charge, as remitted to me.

"In evidence whereof, I sign my name, in the city of Guerrero, on the 21st day of the month of November, one thousand eight hundred and forty-eight, acting with attesting witnesses, in default of a notary public, of which there is none, according to law. To which I certify.

                     "ALEJO GUTIEREZ. [RUBRIC.]

"Attesting witnesses:

    JOSE McG. CUELLAR,   [RUBRIC.]
    EDWARDO DAVILA."   [RUBRIC.]*

---

*The above document is inserted in a manner to show what parts of it are copies, extracted from the Book of Archives, and what parts of it

The State, by counsel, moved to dismiss, and excepted to the petition, and excepted to the evidence adduced on the trial by plaintiffs, presenting every objection to both the petition and evidence which it may be necessary to refer to in deciding this case.

The court, upon the trial, gave judgment for the plaintiffs, and the State, by its counsel, took an appeal to this court.

The general terms of the law authorizing this suit, with its requisites and objects, and the construction given to it by this court, may be found in the opinion delivered in the case of the State v. Salvador Cardenas, *ante*, 250, and need not be here repeated.

Without repeating the various objections made to the petition and title filed, and to the evidence of plaintiffs, it will suffice to discuss the matters to which they relate, that are deemed material to be considered in determining the case.

It was objected that neither the petition, nor the alleged title filed with it, contained a sufficient description of the land to meet the requirements of the law. The description given is substantially that which is given herein previously in the statement of the case, and is certainly deficient in not designating some fixed object or adjoining boundaries of other tracts, so as to arrive at some certainty in rendering a judgment, as a legal guide to the surveyor in making the survey according to law.

It is objected that the instrument filed is wanting in the requisites of a title in form and substance, and because it purports to have been issued by an officer in a foreign Government, when the land was situated within the State of Texas. This objection would be a good one, if it were necessary to file a perfect title, or evidences of right, which could be made to subserve the purpose of a title, perfect or imperfect. In connection with the averments of the petition, it may be held to sufficiently indicate the title relied upon, being

are the words of Gutierez, the alcalde, describing parts of records in his office, that are not copied by him.

the part of it which relates to the alleged ancestor of plaintiffs, in the authentic act founding the town of Ravilla.

It is to be noticed, however, that there is an objectionable discrepancy, apparent at least, in the identification of the land—that sued for in the petition being a portion No. 36, and that to which reference is made in the paper title, in connection with Jacinto de Cuellar, is portion No. 29—which discrepancy is not explained, either by any allegations of the petition or by the proof on the trial.

The plaintiffs sought to establish a title to the land by introducing in evidence on the trial the written document previously described as the one filed with the petition, signed by Alejo Gutierez, alcalde of Guerrero, with attesting witnesses, in 1848, supported by the testimony of witnesses proving the heirship of plaintiffs to the estate of Jacinto de Cuellar, by tradition; long-continued possession of the land; the official capacity of said Alejo Gutierez at the time of the signing of the document, and the genuineness of his and the attesting witnesses' signatures, and rubrics thereto attached, with the following additional statements in relation to the same, by Andreas Garcia, and other witnesses, to wit: "That he knows, from having seen the same in the public archives of the city of Guerrero, that the said grant of one portion of land was made to Jacinto de Cuellar by the Government of Spain in the year 1767. In the charter, or act of visit, founding Ravilla, (original name of Guerrero,) a grant of land was made to each of the original colonists. The name of Jacinto de Cuellar appears thereon, with the grant to one *porcion* (portion) of land made to him. These grants were made by a royal commission, and all included in the same document, in which were set forth the metes and bounds of each grant, and the name of the grantee in regular order, and succeeding one the other. The original document (called the "act of visit") remained in the archives of the town, and each one of the grantees was entitled to a copy of that portion of the act of visit in which the grant to him was set forth,

and such copy served him as a title to his particular tract of land. Therefore, a witness says he knows that the said grant for one *porcion* (which contains a league and a fraction) was extended to Jacinto de Cuellar, and the document annexed to the interrogatories in this suit (being the same previously described as filed with the petition) is the genuine protocol of said grant, and that the same is a perfect legal title under the laws of the State of Tamaulipas at the date thereof, (1848,) and under the laws of Spain at the date of the grant in 1767;" "that Francisco Cuellar is the recognized agent of all the heirs, according to a custom among Mexicans, where many persons hold the same piece of real estate in common." (He is the plaintiff named in the petition.)

Upon this evidence the court rendered a judgment for the plaintiffs, affirming the title as a perfect one.

In addition to all the evidence above recited, the plaintiffs also offered in evidence a sworn copy of extracts of a translated copy of the "act of visit," founding the town and jurisdiction of Ravilla, purporting to be taken, and the translation being made and certified to, by John L. Haynes, under and by authority of an act of the Legislature of the State of Texas, passed 24th of April, 1871, entitled, "An act to provide for obtaining and transcribing of the several acts or charters founding the towns of Reynosa, Camargo, Mier, and Guerrero, in the Republic of Mexico, and of Laredo in Texas, and making an appropriation for that purpose." This translation, pursuant to said act of the Legislature, was filed in the General Land Office, from which said extracts were taken and proved on the trial, by the Spanish translator, to be correct copies thereof as to the parts relating to this title thus extracted. This being excepted to by counsel. for the State, was excluded, to which plaintiffs excepted. (See Paschal's Dig., arts. 5826, 5827.)

This is mentioned here to show, in connection, all of the grounds upon which plaintiffs sought to maintain their title.

It will be proper, first to consider the competency and the

sufficiency of the evidence, written and verbal, which was admitted, and upon which the court acted in affirming the title.

The defects in the evidence may be embraced in three propositions, as here stated, to wit:

FIRST PROPOSITION: The document filed with the petition, signed by Alejo Gutierez, alcalde of Guerrero, with attesting witnesses, was not, in and of itself, a title to the land, nor could it be made so, by the addition and support of the evidence of the witnesses in relation to it, either by proving the authority and signature of the officer that made it, or by giving their opinions of its legal effect as a good title, under the laws of Mexico and Spain.

SECOND PROPOSITION: It was not competent to prove the existing records of Guerrero, by the witnesses, as a means of establishing the title.

THIRD PROPOSITION: Whatever aid long possession may give to a paper title, it is not of itself sufficient in this suit, under this statute; and the title which it must aid, whether perfect or imperfect, must be established by the ordinary rules of evidence applicable to the proof of paper titles, unless it can be shown to be impracticable, from the loss or destruction of records and papers pertaining to it.

For the two last propositions, reference may be had to what is said in relation to them, in the opinion in the case of The State *v.* Cardenas, *ante,* 250.

In reference to the first proposition, there can be no pretense that the instrument signed by Alejo Gutierez, in 1848, is, or possibly can be, a conveyance, in the nature of a grant, to a tract of land in the State of Texas, by virtue of any power vested in him as an officer of a foreign country, (Tamaulipas,) at the time he signed the paper.

It purports, on its face, to be the certificate of an officer of a foreign country, reciting that there is in the archives of his office a certain book, containing in one instrument a title to a number of persons, granted by competent authority many years ago, and incorporates therewith a copy of a fragment-

ary part of the title which relates to a particular tract of land, allotted to a particular person, named, to wit, Jacinto de Cuellar, which certificate is properly signed and witnessed according to the laws of that foreign country, relating to the authentication of copies of his records, which he has a right to give, and is then delivered to some person who has asked him for it. If he had copied the fragment of the record, without any explanation of the balance of the record from which he extracted it, it would be unintelligible. It does not identify the land by number, or by its locality in reference to any other tract or natural object; it does not show who is the grantor or by what authority the grant is made; it does not show the character of the title other than that possession was given, nor does it show by whom it was given. All those things, so far as they are shown at all, are shown by language used by the alcalde in describing other parts of the record, not copied by him in the certificate.

It is too plain for argument that such descriptive recitals by an officer, of what is contained in the archives of his office, which of course must be according to his understanding and construction of it merely, cannot aid or add to that part of the record which he does copy and certify to.

If the clerk of the court here now were to state, in connection with his certificate, that in the records of his office there was recorded a deed of conveyance by A to B, and twenty other persons, of a tract of land to each one, and then copy the field-notes of B as contained in the deed, that would be no authentication of the deed of conveyance to B, that could be received in evidence to prove the deed. This is all that this document signed by Alejo Gutierez amounts to. To contend for any more, must be upon some imaginary power that he, an alcalde in a town in Mexico, had, to make a grant of land in Texas, in 1848, long after the territory in which the land was situated was a part of the State of Texas. It amounted to nothing, therefore, to prove the signatures of Alejo Gutierez and his witnesses to the instrument. It

might, if the whole instrument had been copied, have been proper evidence.

What effect is to be attributed to the testimony of witnesses who state that they know that this document, signed by Alejo Gutierez, is a perfect title to the land claimed in the petition? The proceedings, partaking of the nature of both judicial and executive acts of the public functionaries who founded the town of Ravilla in 1767, in which lands were distributed to a large number of persons within the jurisdiction attached to it, were, doubtless, very long, and the whole of them, joined as one authoritative act, constituted a title, or, at least, the inception of a title, to each one of the first settlers in said jurisdiction who were parties in the laying off and founding the same. It is very likely, on that account, that it may have been customary for the alcalde, or officer in charge of that jurisdiction, to issue such a certificate to each one who might ask for it, (rather than a certified copy of the whole, that would have been expensive from its length,) and that such a certificate may have been regarded and treated by the people there as evidence, for all ordinary purposes of the grant, to that person, as contained in the authoritative act of record in the archives of the town. And under the influence of such a custom, the impression might be produced that such a document would be a perfect legal title. If that had been so, while the land was under the jurisdiction of the alcalde of Guerrero, as part of the province of Santander, or of the State of Tamaulipas, it surely could not have that effect in 1848, after the land had become a recognized part of the territory of Texas. But it is difficult to conceive how such a mere fragment of a title could possibly ever have been made a complete legal title by the laws of Spain or Mexico, where their titles are exceedingly formal and perspicuous in all of their parts when properly understood.

The practice has long prevailed in our courts, of receiving the evidence of intelligent Mexicans, who were not lawyers, in reference to the laws of Spain and Mexico, in litigation

pertaining to lands; and it may be said, to their credit, that they often evince a creditable intelligence relating to the laws, as deduced from the conduct of the officers who administered them. Their evidence has, doubtless, been valuable, therefore, in giving information as to the previous or contemporary construction given to the laws of Spain and Mexico, by the officers who executed them. Their opinions, as to what is or is not a perfect legal title, amount to nothing more than this at most; for it is the business of the courts of Texas to know and expound the laws pertaining to the rights to land situated in Texas, and here in suit, whether the laws, upon which the rights to the land depend, were laws made by the State of Texas, by the Republic of Texas, by the State of Tamaulipas as part of Mexico, or by Spain. We have been referred to no law and have found none which favors the position that such a document as this would have been a perfect legal title under the laws and customs of Spain, or of Mexico, had it been issued when the land in controversy belonged to those countries.

Had it been shown that the grant to the town of Ravilla and its first settlers had been lost or destroyed, and this fragment had been preserved in any authoritative form, then it might have been admissible to have introduced the testimony of witnesses to have proved the existence and contents of the original from which these extracts were taken, which, however, could equally have been done by such proof, without the extracts, as was done in the case of Lewis *v.* San Antonio, 7 Tex., 288.

We are satisfied that the proof of title in this case was not competent and sufficient to confirm the title under the law authorizing this suit.

In reference to the extracts from the records translated and copied from the records of the town of Guerrero, by John L. Haynes, and deposited in the General Land Office, that were offered in evidence and rejected by the court, it may be proper now only to refer to the facts, 1st, that what was offered were only extracts of said record, and not the

entire translated copy of the record, as certified to by said Haynes, or the whole of that part of it that related to the founding of the town of Ravilla; 2d, that from what was offered, it appeared to be translated from a book written on paper, headed, " Mexican Republic, &c., &c., for the years 1831 and 1832;" and it is not explained how that could be the original papers or records in founding Ravilla, in 1767; 3d, the law under which John L. Haynes acted in making this translation does not prescribe that the same, when filed in the General Land Office, shall constitute an archive thereof. (Paschal's Dig., p. 1195, arts. 5826-7.) To which may be added, that in a matter of so much importance as that which is involved in this and other similar suits, it may be well, before a final decision of them, to make a more thorough search than has been made heretofore into the laws of Spain relating to the nature of this title, which each settler received at the foundation of the town, in respect to whether the act of the governor of the province was final, so as to vest a perfect title in each settler, without any further confirmation, or without any separate title to each, in the ordinary forms of Spanish titles of that date. (See 2 White, p. 62; "Royal Regulation of October 15, 1754;" Lib. V, tit. XIII, Law 1, p. 45, 50, 55.)

This opinion, in the case of The State of Texas v. Francisco Cuellar, applies equally to the following cases:

2189. The State of Texas v. Trinidad Villareal et al.

2179. The State of Texas v. Victoria Juarez.

2176. The State of Texas v. Noberto Garza et al.

Which are reversed and remanded.

REVERSED AND REMANDED.

The same opinion applies also to "2106, Samuel M. Jarvis v. The State of Texas."

In this case, the instrument filed with the petition and the proof of title, being more defective than in the preceding cases of the same character, judgment was rendered by the court below against the plaintiff, and for the State of Texas; which is affirmed.

AFFIRMED.