## THE STATE' V. PEDRO SAIS ET AL.

(Case No. 2193.)

1. INCHOATE TITLE.— Under the act to ascertain and adjudicate certain claims for land against the state, situated between the Nueces and Rio Grande rivers, approved August 15, 1870, it was shown that the ancestor of plaintiff occupied the land, embracing three leagues, continuously since 1832, when the initiative proceedings to obtain title were begun, and that his heirs had continuously occupied it since, except when prevented by hostile Indians. *Held,*

(1) Citizens as well as foreigners were included in the colonization laws of Tamaulipas of December 15, 1826, but with preference to citizens.

(2) Under that law a grant of three leagues could be made, or any quantity less than five leagues.

(3) Proof of a formal *act of possession* is not necessary to establish an inchoate right which might have been perfected under the act in question.

(4) When the *expediente* recited that the three leagues were appraised at $90, after the lapse of forty years, during which time possession was shown, and the destruction of the public records, the payment of the appraised value will be presumed.

APPEAL from Travis. Tried below before the Hon. J. P. Richardson.

Pedro Sais brought this suit against the state of Texas, under the act of August 15, 1870, for a confirmation of title to three leagues of land situated in Starr county. He claimed as part owner and one of the heirs of Juan Jose Sais, deceased. The case made is that Juan Jose Sais, father of appellee, was in possession of the land in 1832, and in the fall of that year he denounced the same as grazing lands, and applied to the alcalde of Camargo for such preliminary action as was necessary to secure the grant; that everything requisite under the laws of Tamaulipas was done, that is, appraisers and inspectors were appointed; the land was examined and appraised at $30 per league; a survey duly made by the surveyor-general of Tamaulipas; the *expediente* was made up, properly signed and attested, and, together with the money, to wit, the $90, was forwarded to the governor of Tamaulipas. It is not known whether a grant was issued or not, as the records of the state of Tamaulipas were destroyed by the French troops in 1865.

Juan Jose Sais occupied the land continuously until his death, and appellee and the family have occupied it continuously since that time. The only break in that possession was on account of the incursions of hostile Indians, and that but once or twice, and for a short time only. The *expediente* was attached to the petition.

The state answered by general and special exceptions and general denial.

The suit was tried February 13, 1873, and a decree rendered in favor of appellee confirming the grant to him and co-heirs.

*Peeler & Fisher*, for appellant.

*Chandler, Carleton & Robertson*, for appellees.

WATTS, J. COM. APP.— This suit was brought under the act entitled "An act to ascertain and adjudicate certain claims for land against the state, situated between the Nueces and Rio Grande rivers," approved August 15, 1870.

The object of the suit is to secure the confirmation of an imperfect title to three leagues of land situated in Starr county. Whatever right appellee has to the land in controversy accrued under the colonization laws of the state of Tamaulipas, of December 15, 1826, and had its inception in 1832.

For a full discussion of the object, scope and construction of the act of 1870, reference is made to the able and exhaustive opinions of Chief Justice Roberts, in the cases of The State *v.* Cardinas, The State *v.* Francisco Cuellar, and cases following, reported in 47 Tex., 295.

Appellant's demurrers were properly overruled. The land was sufficiently described in the petition for the purposes of identification. Adjoining surveys and abuttals are given, also the field notes of the survey.

The attorney-general agreed in writing to waive the five days' time, and accepted service of the interrogatories. He also agreed to the appointment of the special commissioner to take the depositions of the witnesses. He had the opportunity of crossing the interrogatories, and his failure to avail himself of that opportunity will not defeat the right of the appellee to the use of this evidence. The objection that the certificate of the commissioner does not show that the witnesses swore to and subscribed their names to their respective answers is obviated by the amendments made by the officer with the permission of the court.

Citizens as well as foreigners were included in the colonization law of Tamaulipas of December 15, 1826. The only distinction made between the two in the acquisitions of land under it is that citizens shall be preferred. Pasch. Dig., art. 783.

It is claimed that there was no law then in force authorizing a

grant of three leagues. An examination of article 25 of the law
of 1826 shows the contrary to be the case; it is there provided that
an adjudication may be made up to the amount of one hundred and
twenty-five million square varas. That provision did not force upon
the applicant five leagues of land, whether he wished that much or
not; but gave the right to designate such quantity of land as the
party might desire, not to exceed five leagues. This construction
of that article naturally results from the context as well as the
plain import of the language; besides it is shown to have been the
construction given to it by the officers of Tamaulipas, whose duty
it was to execute the law.

Appellant urges as ground for the reversal of the judgment that
this land was appraised at $10 per league, whereas the lowest limit
fixed by law was $30. This position is not sustained by the record.
On page 16 of the record will be found, as part of the *expedi-
ente*, the report of the appraisers, wherein it is stated " that, accord-
ing to their knowledge, and on account of the scarcity of water
upon this land, they appraised each of the leagues of those that ap-
pear surveyed in this dispatch at the rate of $30." Again it is
recited as part of the *expediente* that " the three leagues which appear
surveyed and designated in this dispatch amount to the sum of $90,
which, in unison with this dispatch, are directed to his excellency,
the governor, that he may dispose of the same according to his
supreme will."

It is also objected to the judgment that there is no evidence in
the record showing that the alcalde of Camargo put the appli-
cant into the possession of the land. This claim for the land is not
asserted as a perfect grant, but a right so far perfected as to en-
title the appellee to a decree of confirmation.

The law of 1826 says: " The instructive dispatch being termi-
nated, and no opponent of right resulting, the alcalde shall pass it
to the executive of the state, by whom the title of adjudication and
ownership shall be issued to the person interested, ordering that the
alcalde of the town of his residence put him immediately in posses-
sion of the land granted."

Only where the grant was actually issued by the executive that
the order was made directing the alcalde to put the grantee in pos-
session. If the grantee, as here, was already in possession of the
land at the time of the designation, and continued that possession,
no good reason is seen why, even where the grant had been shown
to have issued, it should be shown by evidence that the alcalde
had gone through with the useless formality of investing the

grantee with the possession of land that he was then already in possession of. But, as before remarked, appellee does not assert his claim as a perfect grant, but as a right so far progressed toward completion, that, had there been no change in government, a grant would have issued. The time had not arrived when the law required the order to be issued to the alcalde to put the applicant in possession.

In passing upon the evidence the court, in effect, found that the appraised value of the land, to wit, $90, had been paid by the applicant. The evidence in the record tending to show that fact is the statement in the *expediente* that the three leagues had been appraised at the sum of $90, which, with the dispatch, had been directed to the governor. Considering the fact that more than forty years have elapsed, this recital by a public officer, made in the discharge of his official duty, should be considered as sufficient to sustain the finding of the court in that particular.

This claim had its origin in 1832, and appears to have been founded in good faith. The record evidence of the complainant's right is the *expediente*, containing all the requisites of the law of 1826, and also the payment of the purchase money by the applicant, while the parol evidence shows that the appellee and his father have been in the continued possession from a time prior to the designation of the same in 1832; and that, with the officials of Tamaulipas, this was considered a perfect equitable title. The records of the state of Tamaulipas were destroyed in 1865, which placed it beyond the power of appellee to show by record evidence what action, if any, was ever taken by the executive upon the *expediente*.

The evidence sufficiently shows this to have been such a right as would, in accordance with the law of 1826, have matured into a perfect grant had not the sovereignty over the land passed to and vested in the republic of Texas, and such a right as is included within the spirit of the act of 1870.

The judgment of the court below ought to be affirmed.

AFFIRMED.

[Opinion adopted June 26, 1883.]