THE STATE OF TEXAS v. M. A. A. DE LEON.

(Case No. 1832.)

1. MEXICAN GRANT — IMPERFECT TITLES — PRESUMPTION. — Suit was brought under the act of the state legislature of August 15, 1870 (Acts of 1870, pp. 201–204), for the confirmation of what was claimed to be an imperfect title to something over five leagues of land situate in Hidalgo county. That act provided for the confirmation of such titles to land within a designated portion of the state west of the Nueces river, if it was found that such a title "would have matured into a perfect title under the laws, usages and customs of the government under which it originated, had its sovereignty over the same not passed to and been vested in the republic of Texas, provided said title was originally founded in good faith." *Held:*

(1) That if the steps taken by the applicant to procure the land from the existing government prior to the revolution of 1836 had progressed to the termination of the "instructive dispatch," which was ordered to be passed to the executive of the state of Tamaulipas, and the dispatch shows that whatever had been done was performed in accordance with the laws in force, it must be presumed that the grant would have been issued by the executive, through his act in perfecting it had there been no change in the sovereignty.

(2) If the "instructive dispatch" shows upon its face that the successive steps taken to complete the imperfect title were, as far as they had progressed, not in accordance with the laws then in force, no presumption can be indulged that the grant would ever have been perfected, even if there had been no change in the sovereignty.

2. COLONIZATION LAWS — IMPERFECT TITLES.— On November 3, 1833, an inhabit-
ant of the town of Reynosa applied for land under the colonization law of
Tamaulipas of December 15, 1826; the inspection, survey, appraisement and
other proceedings required by that law (sec. 7, art. 765, Pasch. Dig.) occurred
after the law of October 19, 1833, passed for the benefit of the inhabitants of
Camargo, Mier, Guerraro and Laredo, was in force. *Held,* that in a suit
brought under the act of August 15, 1870, to confirm title, the rights of the
plaintiff were to be determined by considering the regularity of the incipient
steps to obtain title under the law of December 15, 1826, and not under that
of October 19, 1833, which had no reference to applications for land by the
inhabitants of Reynosa.

3. SAME.— Though the law of December 15, 1826, of the state of Tamaulipas
seems to have contemplated that the initial proceeding in securing land was
by petition to the governor, yet since the custom often was to apply to an
alcalde or to the ayuntamiento, the instructive dispatch following which
and referred to the governor, was acted on and deemed sufficient to obtain
a concession, the fact that such petition was to an alcalde instead of the
governor would not vitiate the title, or render invalid the incipient steps
taken after the petition, and before the act of possession. Following State
*v.* Sais, 47 Tex., 307, 315, 323; State *v.* Sais, 60 Tex., 87.

4. SAME.— The colonization law of the state of Tamaulipas of October 19, 1833,
construed, and *held:* that there is nothing in that act which repeals the
third article of the colonization law of 1826 in regard to the initial proceed-
ings by petition to secure land, or which required that the petition should
be addressed to the ayuntamiento.

5. PAROL EVIDENCE TO ESTABLISH LAW.— Though parol evidence is not admis-
sible to establish the fact that certain paper evidences of title were sufficient
to vest title under the laws of a former government, yet when such testi-
mony is given by one familiar with such laws, who was himself an alcalde
who, in an official capacity, administered the law, it might be valuable as
evidencing the previous contemporaneous construction of such law.

6. CONSTRUCTION OF LAWS BY FORMER GOVERNMENT.— The construction of the
laws of a former government, in regard to the powers of its officers, adopted
and acted on by the constituted authorities of such former government,
will be respected, unless it be shown that they transcended their powers or
acted clearly in violation of the laws then in force. Following Hancock *v.*
McKinney, 7 Tex., 384.

7. LAPSE OF TIME — ITS EFFECT ON TITLE.— After the lapse of forty years it
will be presumed that an "instructive dispatch," relating to the acquisition
of land under the colonization laws of Tamaulipas, which was prepared in
like manner with others which received the sanction of the government of
that state, acting through officers familiar with their duties and powers,
was legally prepared, and would have been followed by a grant of the land
from the governor if presented to him for that purpose.

8. ASSISTING WITNESSES.— The laws of Tamaulipas did not require any of the
papers constituting the instructive dispatch required by the colonization
law of 1825 to be authenticated by two assisting witnesses. Had such re-
quirement been made and disregarded, the paper could still be shown to be
genuine by other testimony, under the rules regulating evidence.

9. GRANT — SURVEY.— In a suit to confirm title to land west of the Nueces river,
under the act of August 15, 1870, an excess of three labors in the actual sur-
vey of a tract which was denounced for five leagues, would, after the lapse
of forty years, constitute no ground for withholding a confirmation of title

to the entire survey. Nor could the fact that the appraisers fixed the price of pasture land at $10 instead of $30 per league affect the right to a confirmation of a title in other respects proper to be confirmed. In such case the payment of the amount due the government would be required before the applicant could be entitled to the benefits of a judgment confirming his title.

APPEAL from Travis. Tried below before the Hon. J. P. Richardson.

Appellees instituted this suit January 9, 1877, against the state of Texas, under the act of August 15, 1870, to secure the confirmation of what was claimed to be an imperfect title to five and a fraction leagues of land situated in Hidalgo county. It was claimed that Jose Antonio Leal de Leon, the ancestor of appellees, applied for the land on the 3d day of November, 1833, to the authorities of the village of Reynosa, in accordance with the colonization laws of the state of Tamaulipas, then in force; that the denouncement was complete up to the termination of the instructive dispatch, but on account of the change in government no title was issued by the executive of Tamaulipas. It was further claimed that had not this change in government taken place, this imperfect would have matured into a perfect title under the laws, usages and customs of the state of Tamaulipas. Prayer that it be confirmed, etc.

On February 13, 1873, the cause was tried without a jury, and judgment rendered in favor of appellees, confirming their title, etc.

The only error assigned is that the judgment was not supported by, but that it was against, the evidence.

The substance of the act of August 15, 1870, under which this suit was brought, is stated, so far as the same is necessary to be set forth, in the first subdivision of the syllabus.

The petition alleged that on the 3d day of November, 1833, the ancestor of the appellant applied for the five leagues of land described, to the proper authorities of the village of Reynosa, in accordance with the colonization laws in force in the state of Tamaulipas; that the application was approved November 4, 1833, the adjacent land owners cited, and the surveyor-general ordered to survey the land; that appraisers and experts were appointed; that the survey was made, and a return made of the survey with field-notes and map, and thereupon the usual dispatch (*expediente*) was formed of the whole proceeding, which was indorsed by the first alcalde of the village of Reynosa, who transmitted the same with the price of the land. The prayer was for a confirmation of the title.

*A. J. Peeler* and *S. R. Fisher*, for the State. (A written argument is found in response to questions propounded by the Chief Justice in 1877 to counsel on both sides, but no brief on file for the State.)

*James H. Bell* and *Chandler, Carleton & Robertson*, for appellees, on the points discussed in the opinion, cited: United States *v.* Rice, 4 Wheat., 246; Keene *v.* McDonough, 8 Pet., 310; Davis *v.* P. J. of Concordia, 9 How., 280; 13 Tex., 662; Green *v.* Biddle, 8 Wheat., 92; Bronson *v.* Kinzie, 1 How., 319; McCracken *v.* Hayward, 2 How., 612; People *v.* Bond, 10 Cal., 570; Ogden *v.* Saunders, 12 Wheat., 213; Von Hoffman *v.* City of Quincy, 4 Wall., 550.

WILLIE, CHIEF JUSTICE.— At the Tyler term, 1883, this court adopted the opinion of the commissioners of appeals reported to us in this case, reversing the judgment of the court below, and rendering a judgment in this court in favor of the state of Texas. Subsequently a motion for rehearing was filed by the appellee, asking us to reconsider our former decision and affirm the judgment of the district court.

It was correctly held in the opinion of the commissioners that in this case the matter of procuring the land for which De Leon had made application " had progressed to the termination of the instructive dispatch, which was ordered to be passed to the executive of the state of Tamaulipas;" and it was further properly said, "if this dispatch shows that its several progressive parts are in compliance with the laws then in force, then it would result that, as only the executive in issuing title was required to perfect the grant, had there been no change in the sovereignty, it may be assumed that the grant would have issued. On the other hand, if the instructive dispatch affirmatively shows that the law was not complied with, it will not be assumed that the executive would have extended a title upon it." The opinion then proceeds to set up three supposed defects in the dispatch, by which it was vitiated, and holds that on account of those the governor of Tamaulipas would not have extended title to the applicant, and hence that he cannot recover in our courts under the act of August 15, 1870.

These defects are as follows:

1. The land in controversy was appraised at only $10 per league, whereas the law of Tamaulipas required that lands of its description should not be purchased from the government for less than $30 per league.

2. The land surveyed for De Leon was about three labors more than five leagues, the amount solicited by him.

3. Some of the papers going to make up the instructive dispatch are not attested by two assisting witnesses.

The papers composing the dispatch that precedes the inspection of the land seem to have been executed prior to the 17th of November, 1833; the others bear date subsequent to that time. The application was evidently made under the colonization law of Tamaulipas of December 15, 1826; the inspection, survey, appraisement, and all other proceedings, occurred after the law of November 17, 1833, took effect. We do not regard the law of October 19, 1833, as at all applicable to the case, as it was passed for the benefit of certain towns, among which Reynosa was not included.

The law of 1826 seemed to contemplate that the first step towards obtaining a land grant should be a petition to the governor. The application was to be referred by him to the proper alcalde, whose duty it was to make the appropriate decree in reference to the examining, measuring and marking out the land designated, after citing the adjoining proprietors should there be any. Id., art. 7.

These proceedings, if no opposition was interposed, were to be passed by the alcalde to the executive of the state, by whom the title of adjudication and ownership should be issued to the person interested, ordering that the alcalde of the town of his residence put him immediately in possession of the land granted. The proceedings before the governor were to be conducted officially, and the executive was to proceed with the audience of the fiscal of the supreme court of the state. Article 8.

But whilst the more regular plan may have been to apply in the first place to the executive, it seems that in practice these applications were frequently made to the alcalde, as in this case, or to the ayuntamiento. This we infer from numerous records in this court; and in previous decisions, it has been shown that the instructive dispatch has been recognized by the executive of Tamaulipas as sufficient to obtain the concession, where the original application was not made to the governor.

This court, too, has in effect determined that proceedings not originally commenced by petition to the governor may be sufficient to entitle the applicant to a final concession from the executive. State v. Sais, 47 Tex., 307, 315; State v. Sarnes, id., 323; State v. Sais, 60 Tex., 87.

In the first two cases cited the application seems to have been

made to the ayuntamiento under the law of October 19, 1833; but there is nothing in that law which prescribes that this shall be done; or that repeals expressly the third act of the colonization law of 1826 on this subject. And the citizens of the towns for whose benefit that law was enacted had to obtain their concessions from the governor, as in other cases, although the law did not so provide, the general colonization law of 1826 governing in this respect. See 47 Tex., 259.

In the last case cited the application was under the general law of 1826, and the applicant was held entitled to a concession, though there was no proof that he had ever obtained one, and hence to a judgment of this court, although the denunciation and application was made to the alcalde.

Moreover, it appears to have been proved in this cause that the papers of which the instructive dispatch was made up, vested title to the land in De Leon. Of course this testimony is worthless to prove such title; but coming, as it did, from intelligent Mexicans residing in Tamaulipas, one of whom had himself been an alcalde of Reynosa, it might, as remarked by Roberts, C. J., in State v. Cuellar, 47 Tex., 304, 305, have been valuable in giving information as to the previous or contemporary construction given to the laws of Mexico by the officers who executed them. If their evidence is to have this much weight attached to it, then it shows that the officers construed the colonization law of Tamaulipas as authorizing the proceeding necessary to obtain a grant of land, to begin with an application to the alcalde, and to be conducted in other respects as in the present case.

It may be added that this court has held that "the construction of their powers, and of the laws which conferred them, adopted and acted upon by the authorities under the former government of this country, must be respected until it be shown that they have clearly transcended their powers, or have acted manifestly contrary to law." Hancock v. McKinney, 7 Tex., 384.

After the lapse of forty years it is nothing more than a reasonable presumption that an instructive dispatch, prepared in like manner with others which have received the sanction of the government of Tamaulipas, and by officers familiar with their duties and powers, was legally prepared, and would have been followed by a grant from the executive if presented to him for that purpose.

We are not pointed to any law of Tamaulipas requiring any papers such as are found in the instructive dispatch, to be authenticated by two assisting witnesses. The laws of Coahuila and Texas

did require the final instrument of possession to be so authenticated. Yet under that law this court has frequently held that such an instrument is still valid, if it can be proved to be genuine according to the rules of evidence. Clay *v.* Holbert, 14 Tex., 189; Ruis *v.* Chambers, 15 Tex., 585; Watrous *v.* McGrew, 16 Tex., 506.

Here there was no instrument of possession. It was the want of this that the present suit was instituted to supply. The original order of the alcalde, as to the denunciation, view and survey of the lands, and notice to adjoining proprietors, was authenticated by two witnesses; and the important signatures to all the other papers, as well as to this, were fully proved by witnesses examined at the trial.

It seems that the denunciation was of five leagues under article 25 of the colonization law of Tamaulipas. The survey was intended to be of that amount; but in making up the plat it was found that there was an excess of three labors over and above the five leagues. This may have arisen from an error of the surveyor in making his original calculation, and for such an error it would hardly be proper, at this late day, to cancel the right of the applicant to the entire land. But prior to the making of the survey, the law of November 17, 1833, had taken effect, which allowed as much as six leagues to persons breeding stock, and that this was, in effect, the occupation of the applicant, seems to be clearly inferable from the evidence. So that he did not receive more land than he was entitled to under the law in existence at the time.

The amount fixed by the appraisers to be paid by him for the lands could not vitiate his title. The reasons given by them for fixing the price at $10 per league were, of course, insufficient. But by reference to that portion of the law of 1826 which was not repealed by the decree of November 17, 1833, we find that the appraisers had no authority to fix the price of pasture lands. Art. 23. The law fixed this in all cases at $30 per league, and no act of the appraisers, assessing it at less or more than that amount, could compel the applicant to pay more, or the state to receive less, than $30, unless it contained running water, which was not the case in reference to the present land. The applicant, therefore, before receiving possession of the land, was bound to pay to the state $30 per league, regardless of the appraisement; and the appraisement did not affect either his rights nor those of the government. For these reasons the judgment heretofore entered in this appeal will be set aside and a rehearing granted; and the judgment below will

be so reformed as to require a payment into court of the sum of $153.60 by the appellee within twelve months from this date, before obtaining the benefit of the judgment below, which is in all other respects affirmed, the appellee to pay the costs of this appeal.

REFORMED AND AFFIRMED.

[Transferred from Austin to Tyler, and opinion delivered December 8, 1885.]